51 530

## PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name  DANIELS          LOUIS          CHARLES
     (Last)             (First)          (Initial)

Prisoner Number  B-82157

Institutional Address  P.O. BOX B-82157, SAN QUENTIN, CA. 94974

**FILED**

JUN 1 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

LOUIS CHARLES DANIELS

**CV 08    2934**

Full Name of Petitioner

Case No.(To be provided by the
clerk of court)

**SI**

**E-filing**

vs.

**(PR)**

ROBERT AYERS (SAN QUENTIN WARDEN)

PETITION FOR A WRIT OF HABEAS CORPUS

Name of Respondent
(Warden or jailer)

Read Comments Carefully Before Filling In

### When and Where to File

    You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

    If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your

petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

(a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

| SUPERIOR COURT | SAN FRANCISCO COUNTY |
|---|---|
| Court | Location |

(b) Case number, if known ___93749___

(c) Date and terms of sentence _4-11-77___7-TO-LIFE___

(d) Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) Yes x  No

Where? SAN QUENTIN STATE PRISON, 1 MAIN STREET, SAN QUENTIN, CA. 94974
(Name of Institution)                                  (Address)

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

Kidnapping For Robbery; False Imprisonment, Rape; assault with

a Deadly Weapon; Receiving Stolen Property; Attempted Robbery;

Prior Felony Convictions.

3. Did you have any of the following?

Arraignment: Yes x  No ___  Preliminary Hearing: Yes x  No ___ Motion to Suppress: Yes ___ No ___

3

4.    How did you plead?

Guilty _____    Not Guilty __X____    Nolo Contendere _____

Any other plea (specify) _____ NO _____

5    If you went to trial, what kind of trial did you have?

Jury __X__    Judge alone _____    Judge alone on a transcript _____

6.    Did you testify at your trial?  Yes _x_ No __

7.    Did you have an attorney at the following proceedings:

(a)    Arraignment   Yes _X_         No __
(b)    Preliminary hearing          Yes X        No __
(c)    Time of plea   Yes _x_        No _
(d)    Trial   Yes _x_    No __
(e)    Sentencing   Yes _x_         No __
(f)    Appeal       Yes _x_    No
(g)    Other post-conviction proceeding    Yes __        No _x_

8.    Did you appeal your conviction?   Yes _x_ No __

(a)    If you did, to what court(s) did you appeal?

| | | | | |
|---|---|---|---|---|
| Court of Appeal | Yes _X_ | No __ | ___1978___ (Year) | _Affirmed_ (Result) |
| Supreme Court of California | Yes _x_ | No __ | _1978-79_ (Year) | HEARING DENIED (Result) |
| Any other court | Yes __ | No _X_ | _____ (Year) | _____ (Result) |

(b)    If you appealed, were the grounds the same as those that you are raising in this petition?                                    Yes __ No _X_

(c)    Was there an opinion?        Yes X    No

(d)    Did you seek permission to file a late appeal under Rule 31(a)?
                                Yes        No X

If you did, give the name of the court and the result:

9.    Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?    Yes         No x

Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

      (a)    If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.    Name of Court _____ SAN FRANCISCO COUNTY SUPERIOR COURT _____

Type of Proceeding _WRIT OF HABEAS CORPUS_____

Grounds raised (Be brief but specific):

a.    ___SEE ATTACHED POINTS AND AUTHORITIES_____

b.    _____

c.    _____

d.    _____

Result _____ DENIED _____ Date of Result ___ 1-18-2008

II.    Name of Court ____ APPEAL COURT _____

Type of Proceeding _____ HABEAS CORPUS _____

Grounds raised (Be brief but specific):

a.    SEE ATTACHED POINTS AND AUTHORITIES _____

b.    _____

c.    _____

d.    _____

Result denied _____ Date of Result __ 2-7-2008

III.    Name of Court _____ California Supreme Court _____

Type of Proceeding ___HABEAS CORPUS_____

Grounds raised (Be brief but specific):

a. _____SEE ATTACHED POINTS AND AUTHORITIES_____

b. _____

c. _____

d. _____

Result ____REVIEW IS DENIED_____ Date of Result __4-30-2008__

    (b)   Is any petition, appeal or other post-conviction proceeding now pending in any

court?    Yes __ No X

_____

(Name and location of court)

## B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you need more space. Answer the same questions for each claim.

Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. § 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

Claim One: SEE ATTACHED POINTS AND AUTHORITIES_____

Supporting Facts: _____

_____

_____

_____

Claim Two: __SEE ATTACHED POINTS AND AUTHORITIES_____

Supporting Facts: __SEE ATTACHED_____

_____

_____

Claim Three: ____SEE ATTACHED_____

Supporting Facts: ___SEE ATTACHED_____

_____

_____

If any of these grounds was not previously presented to any other court, state briefly which

grounds were not presented and why:

SEE ATTACHED
_____

_____

_____

SEE ATTACHED

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

SEE ATTACHED

Do you have an attorney for this petition?    Yes __ No X

If you do, give the name and address of your attorney:

N/A

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on __May 28, 2008__    _____
          Date                    Signature of Petitioner

( rev. 5/96)

IN THE FEDERAL DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

LOUIS DANIELS

Petitioner

V

ROBERT AYERS, JR (Warden San
Quentin State Prison)

Respondent

CASE  NO

CALIRORNIA SUPREME COURT
CASE No. S1613577
APPELLATE COURT # A120571
SUPERIOR COURT OF SAN FRANCISCO
CASE NO. 5674

WRIT OF HABEAS CORPUS

Louis Daniels
B-82157, 1-N-18/L
San Quentin Prison
San Quentin, CA. 94974

VERIFICATION

STATE OF CALIFORNIA)
         1
COUNTY OF MARIN   )

(C.C.P. section 446 & 2015.5; 28 U.S.C. section 1745)
I, LOUIS DANIELS , declare under penalty of perjury that:

I am a party in the above-entitled action; I have read the foregoing documents and know the contents thereof; and the same is true of my own knowledge, except as to matters stated therein upon information and belief, and as to those matters I believe they are true.

Executed this  28 th day of  MAY  2008, at San Quentin State Prison, San Quentin, California 94974.

S/S _Louis Daniels_
LOUIS Daniels

## TABLE OF CONTENTS

### Pages

VERIFICATION .............................................................................................................. 2

TABLE OF CONTENTS .................................................................................................. 3

CONSTITUTIONAL QUESTIONS .................................................................................. 6

INTRODUCTION ............................................................................................................ 7

THE BPH IS REQUIRED TO USE THE PREPONDERANCE OF
EVIDENCE STANDARD DURING A PAROLE HEARING ............................................ 13

THE BOARD OF PRISON HEARINGS FAILED TO UPHOLD
THE SOME EVIDENCE REQUIREMENTS.................................................................. 15

CONCLUSION ............................................................................................................. 25

ii.

## TABLE OF AUTHORITIES

Cases

Pages

Anderson v. Smith, 97 F.2d 239 ........................................................................................11

Biggs v. Terhune  (9th Cir. 2003) 334 F. 3d 910 ...............................................14,20,24,27

Bolani v. Immigrations, 9 F .2d 1157 ................................................................................11

Caldwell v. Miller, 790 F.2d 589 ......................................................................................10

Carson v. Block, 790 F.2d 562 ........................................................................................10

Criscione, Santa Clara Superior Court 71614 .................................................................10

Envil.Def.Ctr. Inc. v. EPA (2003) 344 F.3d 832 ..............................................................14

In re Dannenberg (2005) 34 Cal.4th 1061 .................................................................17,18

In re DeLuna (2005 126 Cal.App.4th 585 .....................................................................6,14

in re Elkins, 144 Cal.App.4th 475 .................................................................................2,22

In re Lee, 143 Cal.App.4th 1404............................................................................   22,27

In re Lowe, 130 Cal.App.4th 1405 ...........................................................................   17

In re Ramirez (2001) 94 Cal.4th 549 ...........................................................................   2

In re Rosenkrantz (2002) 29 Cal.4th 616................................................2,6,7,16,17,18,27

In re Rosenkrantz (2000) 80 Cal.App.4th .......................................................................10

In re Scott, 119 Cal.App.4th 871 ...........................................................................   2,18

In re Scott, 133, Cal.App.4th 573 ...........................................................8,14,17,19,21,26

In re Smith, 109 Cal.App.4th 503 ...............................................................................16,20

In re Van Houten, 11 Cal.App.4th 329............................................................................18

Jancsek, 833 F.3d 1390 ..................................................................................................14

Martin v. Marshall, 431 F.Supp.2d 1038.........................................................................25

McCullough v. Kane (N.D.) C05-2207 WL1593227 ...........................................................7

McQuillion v. Duncan (9th Cir.2002) 306 F.3d 895....................................................   14

McBee v. Bonner, 296 F.2d 235................................................................................   12

Michelson v. United States, 335 U.S. 460 .................................................................   3

Morse v. Texas, 691 F.2d 770........................................................................................3

Morton v. Ruiz, 415 U.S. 199 ..........................................................................................11

North Carolina v. Alford, 400 U.S. 25 ............................................................................3

Pearce v. Director, 647 F.2d 716....................................................................................10

People v. Neol (2005) Cal.App. Lexis 711, 148 ...............................................................14

Rosenkrantz v. Marshall, 444 F.Supp 2d 1063....................................................2,18,24,28

Superintendent v. Hill (1985) 472 U.S. 445 ............................................................1,12,19

Services v. Dulles, 354 U.S. 363 ....................................................................................11

Taylor v. U.S., 734 F.2d 1152.........................................................................................11

Turner v. Henman, 829 F.2d 612 ...................................................................................10

United States v. Beechum, 582 F.2d 898 .........................................................................3

United States v. Davila, 698 F.2d 715 ..............................................................................3

VanderMolen v. Stetson, 571 F.2d 617 ..........................................................................11

Vitarelli v. Seaton, 359 U.S. 535.....................................................................................11

Wolff v. McDonell, 418 U.S. 539...........................................................................    1

STATE STATUTES

Evid.Code 210...............................................................................................................1,4

Penal Code   3041 .........................................................................................................15

Cal.Code of Regs., tit. 15   2000 ............................................................................ 1,11,12

Cal.Code of Regs., tit. 15   2281 .............................................................4,5,13,14,16,29,30

Cal.Code of Regs., tit. 15   2402 ...............................................................4,12,13,15,29,30

FEDERAL STATUTES

Fed.R.Evid. 404(b) ...........................................................................................................1

IN THE FEDERAL DISTRICT COURT FOR NORTHERN

DISTRICT OF CALIFORNIA

LOUIS DANIELS                          CASE NO.

                          Petitioner

V

ROBERT AYERS, JR (Warden San
Quentin State Prison)

                          Respondent

CONSTITUTIONAL QUESTIONS

(1)     Is it a Constitutional violation to use case law not applicable to the
crime, to find "some evidence" to deny parole? (Cal.Ev.Code 210; Fed.R.Ev.
404(b); Superintendent v. hill (1985) 472 U.S. 445.)

(2)     Is it a Constitutional violation pursuant to mandated legislation
when the Board of Prison Hearings fails to uphold their own rules and
regulations? California Code of Regulations title 15   2000 (50).)

Petitioner was convicted as a result of rape and kidnapping, and received
a sentence of 7 years to life in state prison. Petitioner has had 11 parole hearings
and has now been incarcerated for over 30 years.

## INTRODUCTION

Petitioner appeared before the California Board of Hearings on March 15, 2007 and was denied parole, to which the board's decision is not in accord with a proper reading of the relevant statutes, regulations and case law. The "some evidence" standard of review provides broad discretion to the Board, however, it is in fact bound by three requirements: (1) the evidence must be drawn from the factors enumerated in the statutory and regulatory framework; (2) the evidence must be deemed relevant and reliable; and (3) the evidence must reasonably speak to whether the inmate poses a current public safety threat.

As important is that the Board must show the crime is beyond the minimum elements necessary to sustain a conviction for the offense in order to satisfy the California Code of Regulation title 15    2281, and to meet the especially heinous, atrocious or cruel manner set forth therein. As will be shown, the Board's findings were not in accord with In re Rosenkrantz, 29 CAl.4th 616; Ronsenkranta v. Marshall, 444 F.Supp.2d 1063; In re Elkins,    (2226) 144 Cal.App.4th 475; In re Scott, 119 Cal.App.4th 871, and In re Ramirez, 94 Cal.app.4th at p. 569. (The offense must be found on "all ...relevant factors."Rosenkrantz, supra, 29 Cal.4th at pp. 660, 677.)

In that the foregoing citations are not relevant, and petitioner's commitment offense does not meet the "minimum elements necessary to sustain a conviction for the offense"

pursuant to the Cal.Code of Regs., tit., 15    2281. there is no evidence, not a

modicum of evidence, to deny parole.

Although there is no question that in most cases the statutory "commitment offense" factor is relevant pursuant to Rosenkrantz and Dannenberg, and at times may be enough to deny parole, it will be shown Rosenkrantz and Dannenberg do not apply in petitioner's case. Both Rosenkrantz and Dannenberg address commitment offenses in relation to murder, to which this petitioner did not commit murder. In other words, if the Board of Prison Hearings, and Courts, use a crime on the basis of conduct (Ronsenkrantz and Dannenberg) which do not constitute the crime, it offends the basic notions of justice and fair play embodied in the Constitution. North Carolina v. Alford, 400 U.S. 25; United States v. Davila,  698 F.2d 715 723; Morse v. Texas, 691 F.2d 770, 773. Further, evidence of the commission of a wholly separate and independent crime that is not on point with petitioner's conviction is inadmissible. (Michelson v. United States, 335 U.S. 469, 475-76 69 S.Ct. 213,218,93 L.Ed. 168, the evidence cannot possess probative valve which is outweighed by undue prejudice. United States v. Beechum. 582 F.2d 898, 911, cert denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472.)

When a court uses citations in relation to a crime where murder was committed to deny a writ where no murder occurred, it is tantamount to extrinsic evidence. It is required that the physical elements of the extrinsic offense include the essential physical elements of the offense for which petitioner was convicted. According to the Fed. R. Evid. 404(b): Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he

acted in conformity therewith.

The probative valve of Rosenkrantz and Dannenberg's offenses are deemed insufficient to outweigh the inherent prejudice caused to petitioner. Therefore, as a predicate to a determination that extrinsic offenses are relevant, the Board and Court must offer proof demonstrating that petitioner committed murder.

The Board in petitioner's case did not demonstrate relevance when using the California Code of Regulations title 15   2281(c)(1)(A)(B)(C), which is identical to   2402, where it is shown that the commitment offense must be especially heinous, atrocious or cruel, with multiple victims killed, and the offense must have been carried out in an execution- style murder.

According to California Evidence Code section 210, "relevant evidence" means evidence that has a tendency to prove or disprove any disputed fact that is of consequence to the determination of the action.

Evidence Code section 210 encompasses a broad concept of relevance. That concept comprehends both the probative value of evidence and its relationship to a matter which is provable in the action. Thus, as broadly defined by Evidence Code section 210, "relevant evidence" has two distinct dimensions: (1) probative value, i.e., the "tendency [of the evidence] in reason to prove or disprove" the proposition for which it is offered and (2) relationship to a matter which is provable in the action, i.e., the "tendency [of the evidence] in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Under the broad definition of "relevant evidence" in Evidence Code

Section 210, evidence which has no "tendency in reason to prove or disprove any disputed fact or consequence  to the determination of the action" is irrelevant.  So also is evidence which does have "any tendency in reason to prove or disprove any ..." fact which is not of consequence to the determination of the action. Therefore, the Court's use of Rosenkrantz and Dannenberg, and/or the Board's use of factors pursuant to Cal. Code of Regs, tit., 15    2281 (c)(1)(A)(B)(C) where no murder was committed, is tantamount to using extrinsic evidence, and violates petitioner's due process rights.

The question now is whether, on this individualized record, the criminal history constitutes some evidence to support the Board's conclusion that petitioner poses an unreasonable risk of danger to the public safety. "If on or more of the factors [relied upon by the board] lacks evidentiary support, the next questions are whether the Board would have denied parole based upon the supported factors and whether this result 'satisfies the requirements of due process of law' because the factors for which there is  some evidence 'constitute a sufficient basis supporting the ...discretionary decision to deny parole.'" (Deluna, 126 Cal.App.4th at p.598, quoting Rosenkrantz, 29 Cal.4th at p. 677.) "We will uphold the denial of parole when it appears that the Board would have reached the same conclusion based on the supported factors and those factors individually or collectively justify that conclusion." (Deluna, supra, 126 Cal.App.4th at p. 598.) "On the other hand, the 'decision cannot stand' when findings on important factors lack evidentiary support and it is not clear that the Board would have reached the same conclusion based on the supported factors."

(Ibid)

Moreover, in that there are no cases in relation to kidnapping or rape, where no murder occurred, that can be considered "beyond the minimum necessary," there was no evidence to deny petitioner's parole.

The relevant question then is whether the Panel would have denied petitioner parole based only on his past criminal history. In Rosenkranrz our high court stated that "'[t]he Board's authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's ...past offenses should not operate as to swallow the rule that parole is "normally" to be granted. Otherwise, the Board's case-by-case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the statutes, which provide distinct terms of life without possibility of parole, 25 years to life, and 15 years to life for various degrees and kinds of violations. (Rosenkrantz, supra, 29 Cal.4th at p. 683.) "[T]he parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should [the inmate] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [the commitment] offense and prior conduct would raise serious questions involving his liberty interest in parole. [ ] ...A continued reliance in the future on an unchanging factor, ... conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."

(Biggs, supra, 334 F.3d at pp. 916-917.)

According to McCullough v. Kane (N.D.Cal. June 1,2007, No. C05-2207 MHP) 2007 WL 1593227, *8, 2007 U.S. Dist. Lexis 43674, "the message of [Biggs, Sass, and Irons [I] is that the [Board] can look at immutable events, such as the nature of the conviction offense and pre-conviction criminality, to predict that the prisoner is not currently suitable for parole even after the initial denial (Sass), but the weight of the attributed to those immutable events should decrease over time as a predictor of future dangerousness as the years pass and the prisoner demonstrates favorable behavior (Biggs and Irons)...Not only does the passage of time in prison count for something, exemplary behavior and rehabilitation in prison count for something according to Biggs and Irons. Superintendent v. Hill's standard might be quite low, but it does require that the decision not be arbitrary." (Id. at *7, *8,) Applying this standard, the court in McCullough concluded that Governor had violated the inmate's due process rights by denying parole 21 years into a 15-years-to-life sentence based only upon the commitment offense and past criminality, in the face of an exceptional prison record. (Id. at *9.)

As previously mentioned, petitioner has been incarcerated for 32 years, and during that time he has attended Positive Attitude; Katargeo; Buddhadharma; Victim Offenders Education Group; Vorg; Pastoral Care; Breaking Barriers, NA/AA; Women's Crisis Center, San Quentin Toy Program; Interfaith Retreat Program, and Operation Mom, (Exhibit 38-43,60-61.) Petitioner has been assessed as posing no more danger to the public than the average

citizen, particularly given has age (58) and disanilities. (pp. 45-48,57,59,60) Against the immutability of petitioner's past criminal history and its diminishing predictive value for future conduct, these factors must be considered. (Scott II, 133 Cal.App.4th at pp. 594-595 [reliance on an immutable factor without regard to subsequent circumstance may be a due process violation.)

Of the one section 2281 subdivision (b) factor relied upon by the Board in denying petitioner parole, the Board has found in 12 parole consideration hearings that past criminal history constitutes some evidence to conclude that petitioner would pose an unreasonable risk of danger if released, which is in violation of In re Scott, Rosenkrantz, and Biggs. Petitioner has now been incarcerated equivalent to 40 years according to the Matrix. It has been 12 years since petitioner's last disciplinary. And aside from the crimes committed by petitioner, which are all too old to consider petitioner to be a danger to society, it is indisputably shown that petitioner has become a competent and responsible person who has done quite well while incarcerated.    Given everything petitioner has learned, his age and the fact that he has experienced a slowing down during the last few years, due to his disabilities and self-help therapy, he would make an excellent candidate for parole. It must therefore be considered whether continuing to deny parole based upon the immutable factor on his past criminal history would be a denial of due process.

## THE BPH IS REQUIRED TO USE THE PREPONDERANCE OF EVIDENCE STANDARD DURING A PAROLE HEARING

Failure on behalf of the California Board of Hearings to follow its  procedures is fundamentally unfair, and a violation of the Fifth Amendment.    The United

States Constitution Requires States and their agencies to comply with all the procedures they establish. Carson v. Block, 790 F.2d 562, 565- 6. A violation of the BPH's rules authorizes relief in this proceeding if the rules are themselves essential components of due process of law- that is, if the procedures used by the BPH violates the Constitution. Under 18 U.S.C. 4218, a parole board's failure to follow administrative rules and regulations violates constitutional provisions. Turner . Henman, 829 F.2d 612. Numerous federal courts, including the United States Supreme Court have found "an inmate is entitled to expect the Bureau of prisons to follow its own policies." Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2925, 41 L.Ed.2d 935. In re Rosenkrantz (2000) 80 Cal.App.4th 409, 424-425 also found the Board must determine parole suitability by following its own rules and regulations. Caldwell v. Miller, 790 F.2d 589,09. ruled that "an agency must conform its actions to the procedures that it has adopted." See Pearce v. Director, Office of Worker' Compensation, 647 F.2d 716; VanderMolen v. Stetson, 571 F.2d. 617, 624; See also Morton v. Ruiz, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (Where the right of individuals are affected, it is incumbent upon agencies to follow their own procedures.) Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012; Services v. Dulles, 354 U.S. 363, 77 S.CT.1152, 1 L.Ed.2d 1403. "An inmate, too has the right to expect prison officials to follow its policies and regulations." Anderson v. Smith, 697 F.2d 239. Here the proper procedure for the BPH and courts to follow is the "preponderance of evidence" standard within the Cal. Code of Regs. tit. 15 2000(50). Section 2000(a) states: "The following rules of

construction apply to the regulations contained in this division..." At the end of 2000 reference is made to Penal Code 3041 - thus all prison inmates have a liberty interest pursuant to Cal.Code of Regs. tit. 15 2000(50) preponderance of evidence. and not the more stringent "some evidence" standard, which is not mandated by the California State Legislature. Whenever an abuse of discretion is made by an administrative agency, reviewing courts cannot set it aside unless the court has a definite and firm conviction that a clear violation in judgment has not taken place. Taylor v. United States Parole Commission, 734 F.2d 1152, 1154; Bolani v. Immigration & Naturalization Service, 669 F.2d 1157, 1160; McBee v. Bonner, 296 F.2d 235, 237. Although numerous courts are using the "some evidence" standard as set forth in Superintendent v. Hill, supra, 472 U.S. 445, and In re Rosenkrantz supra, 29 Cal.4th 616, the "some evidence" standard is in direct conflict with the Cal.Code of Regs. tit. 15 2000(50). The fact is, the law is what it is, and the "some evidence" standard should not be allowed to supersede the mandated preponderance of evidence within the Cal.Code of Regs. title 15 2000. If the Legislature intended for the "some evidence" to be the applicable standard, the Cal.Code of Regs, tit. 15 2000(50) would have been repealed. Cal.Code of Regs. title 15 2402 sets forth six (6) factors in finding an inmate unsuitable for parole: (1) Commitment Offense; (2) Previous Record of Violence; (3) Unstable Social History; (4) Sadistic Sexual Offenses; (5) Psychological Factors and (6) Institutional Behavior. 2402 mandates nine (9) "Circumstances Tending to Show Suitability" which are: (1) No Juvenile Record; (2) /stable Social History; (3) Signs of

Remorse; (4) Motivation for Crime; (5) Battered Woman Syndrome; (6) Lack of Criminal History; (7) age; (8) Understanding and Plans for Future and (9) Institutional Behavior. There are a total of fifteen factors the Board must use to find suitability or unsuitability. If the Board implements the Cal.Code of Regs. title 15 2000(50) and uses the preponderance of evidence standard, eight of the above mentioned factors is required to find petitioner unsuitable for parole, not one immutable, unsubstantiated factor as was done in petitioner's hearing. According to the Cal.Code of Regs. title 15 2281 (d)(7) the parole suitability determination process requires that part one, or part two of 2402 be satisfied, which is in conflict with the "some evidence" policy of using one factor to deny parole

## THE BOARD OF PRISON HEARINGS FAILED TO UPHOLD
## THE SOME EVIDENCE REQUIREMENTS

a. Consequences of actions and magnitude    Rodrnktsntz held the "some evidence" standard is not met when the Board minimizes culpability. It did so after (1) delving into the entire record before the Board as to the relevant issue in question; (2) specifically reviewing evidence that the Board had omitted in making its determination; and (3) assessing the reasonableness of the Board's interpretation of the entirety of there circumstances. After reviewing all the evidence before the Board on this issue, the court will find no reasonable interpretation of the circumstances would justify finding "some evidence." Indeed, the Board's failure to consider all relevant evidence is consistently deemed, in a variety of contexts, to be arbitrary and capricious and abuse of

discretion. See e.g., Envil. Def. Ctr, Inc. v. EPA (2003) 344 F.3d 832, 858 n.35 (holding federal agency has acted in arbitrary and capricious fashion if the agency has "entirely failed to consider and important aspect... [or] its decision... runs counter to the evidence.") According to People v. Neol (2005) Cal.App. Lexis 711, at 148, "The trial Court was not permitted to substitute its conclusion... under circumstances where it could not explain how this...bit of evidence trumped the otherwise overwhelming counter railing credible evidence..." This is the same as the Board has done in petitioner's case. Evidence relied on by the Board must be "reliable," (Regs.. 2402, subd. (b), 2281, subd. (b)); it must have ""some indicia of reliability.""" (In re Scott (2005) 133 Cal.App.4th 573, 591, 34 Cal.Rptr.3d 905; Biggs, 334 F.3d at 915; McQuillon, 306 F.3d at 904; Jancsek, 833 F.3d at 1390.), Additionally, the requirement of procedural due process embodied in the California Constitution (Cal. Const., art. I, 7, subd. (a)) places some limitations upon the discretionary authority of the Board. (In re Rosenkrantz (2002) 29 Cal. 4th 585, 655. A prisoner is entitled to "an individualized consideration of all relevant factors.") (In re DeLuna, 126 Cal.App.4th at p. 591.) The Board's decision "must reflect an individualized consideration of the specified criteria and cannot be arbitrary or capricious." The forgoing requirement was not accomplished during petitioner's hearing. There is nowhere in the record that shows the Board used the California Code of Regulations, title 15 2281, and individually cited each factor in relation to their findings. In order for the Board to meet procedural due process embodied in the California Constitution it must address all fifteen (15) factors,

and not give one (1) turgid reason without implementing all applicable factors. This very issue was recently addressed by the Santa clara Superior Court in In re Criscione, August 30, 2007, No. 71614, p.28, where the court found "The PC 3041 (b) exception to the rule can only be invoked when the 'gravity of the current convicted offense or offenses, or the timing and gravity of current r convicted offense of offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual.' The word 'gravity' is a directive for comparison just as 'more length' indicates a deviation from the norm. While Dannenbery held there does not need to be intra case comparison for the purposes to term uniformity of proportionality, there necessarly has to be some sort of comparison for the purposes of adhering to the legislative mandate that parole is available. This is implicit in 2402 because the qualifier 'especially,' in 'especially heinous atrocious of cruel,' requires that some form of comparison be made. While the original drafters of 2402 seemed to have recognized this fact, the ongoing conduct of the Board has completely gored it,.." Petitioner will now address each in numerical order: (1) Callous disregard for safety California courts implemented what is known as the "beyond the minimum necessary" in relation to the death of a victim. (In re Rosenkrantz, 29 Cal.4th at 683.) In otherwords, what evidence indicates the commitment offense was "especially atrocious, dispassionate and calculated." given that there typically must be a finding of some level of heinousness, in order for anyone to have been convicted in the first place? Cal.Code Regs tit. 15 2402 (c)(1); Smith 114 Cal.App.4th at 356-67 (noting that "all second degree

murders by definition involve some callousness-i.e., lack of emotion or sympathy, emotional insensitivity, indifference to the feelings and suffering of others." In order for a crime to be "atrocious, dispassionate and calculated" and meet the "minimum necessary to sustain a conviction" pursuant to the Cal.Code of Regs., tit. 15  2281, the offense must have been carried out execution- style. Rosenkrantz, supra, 29 Cal.4th at p. 683. The Cal.Code of Regs., tit. 15  15 2281 and Rosenkrantz requirements cannot possibly apply to petitioner's case, because petitioner did not commit murder. (Petitioner incorporates pages 2-9 into this argument.) Moreover, there had to be multiple victims killed in the same or separate incidents. (See CAI.Code Rrgs, tit. 15  2281(a)(1)(A).) In re George Scott, 133 Cal.App.4th (#) (Oct. 18, 2005) held "[it] is necessary to remember that denial of parole based upon the nature of the offense may rise to the level of a due process violation, as where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense." Rosenkrantz, supra. 29 Cal.4th at p. 683.) Therefore an unsuitability determination must be predicated on "some evidence that the particular circumstances of [the prisoner's] crime-circumstances went beyond the minimum elements of his conviction-indicated exceptional callousness and cruelty with trivial provocation, and thus suggested he remains a danger to public safety." (In re Dannenberg, supra, 34 Cal.4th at p. 1098.) The Scott court went on to explain comparisons, "[in] rosenkrantz..a full week of careful preparation, rehearsal and execution" took place, "[the] prisoner, fired 10 shots at close range from an assault weapon and fired at least three of

four shots into the victim's head as he lay on the pavement, carried out the crime with planning, sophistication or professionalism," is more aggravated or violent, and meets the "minimum necessary." Rosenkrantz, at p. 678.) Similarly, there was evidence of premeditation in In re Lowe (2005) 130 Cal.App.4th 1405, which also involved a second degree murder conviction. There the prisoner purchased the gun shortly before the murder, entered his victim's bedroom in the middle of the night whilr hr was asleep, unsispecting, and in a special relationship of confidence and trust with his killer, 'shot him five times in the head and chest, execution style.' (Id. at p. 1414.) As this court stated, this evidence showed the murder 'was a cold-blooded execution' and that the prisoner's 'egregious acts [were] far more aggravated than the minimum necessary to sustain a second degree murder conviction.'" (In re Scott, 119 Cal.App.4th 871, 889-892; In re Van Houten (2004) 116 Cal.App.4th 339; Rosenkrantz v. Marshall, 444 F. Supp. 2d 1063; In re Dannenberg, 34 Cal.4th at p. 1098.)) The circumstances of petitioner's crime do not meet the foregoing requirements. The fact is, petitioner's crime is significantly less egregious than those in other cases in which the nature of the offense was found to support a finding of suitability. (See Rosenkrantz v. Marshall, supra, 444 F. Supp.2d 1063.) There is no evidence petitioner injured his victims before ... or that he gratuitously increased or unnecessarily prolonged pain and suffering." See In re Scott, 119 Cal.App.4th 871, 892.) Because the relevance evidence shows no more callous disregard for human suffering than is shown by most offenses, the Board's use of this factor to conclude that petitioner committed his offense in a manner that

showed "callous disregard for safety" (p.70) is arbitrary and capricious. (In re Rosenkrantz, supra, 29 Cal.4th at 655.) Thus the Board's denial does not meet the "minimum necessary" standard as set forth in Rosenkrantz, or the "some evidence" standard in Superintendent v. Hill, supra, (1985) 472 U.S. 445. Under the regulations applicable to evaluating an inmate's current dangerousness, the viciousness of the commitment offense must be balanced against the passage of time and any evidence of an inmate's rehabilitation. Among the indicators of parole suitability are: (7) Age. The prisoner's present age (58) reduces the probability of recidivism. (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release. (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release." (Regs., 2402, subd. (d).)     According to In re Scott, (2005) 133 Cal.App.4th 573, 595. "The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison."     The fact petitioner did not commit murder, combined with the fact he is now in his late fifties, greatly reduces the risk he will be a danger to the public safety if released on parole.     In recent years, several California appellate courts have applied the state constitution's due process "some evidence" standard as declared by the California Supreme Court in In re Rosenkrantz, 29 Cal.4th 616, 681 and found a commitment murder insufficient to sustain a denial of parole many years or decades later. Meanwhile, several

federal district courts have invoked the federal due process "some evidence" standard set forth in Biggs v. Terhune, 334 F.3d 910 to reverse parole denials, again when based on old commitment offenses. The California Supreme Court expressly limited its own definition of the "some evidence" standard to what the California Constitution and not the U.S. Constitution requires when courts review Board and gubernatorial denials of parole. As such, this Court is free to consider opinions applying both federal Niggs standard as well as those applying the Rosenkrantz standard. If the Board's denial of parole fails under either of these standards of review, it is subject to reversal. Even though petitioner did not kill anyone, the following murder cases are being used to show this Honorable Court that the California appellate courts have found commitment offenses insufficient to supply "some evidence" to support a denial of parole. In In re Smith (2003) 109 Cal.App.4th 489, a shooting, beating and drowning occurred in relation to a man who was believed to have sold bad cocaine to a major customer of the prisoner. In 2000 the Board set a parole release date, but the Governor reversed the finding. Id. p.492. The Court of Appeal in an opinion stressed the many factual errors in the Governor's report, and found parole was appropriate. According to In re Scott, supra, 133 Cal.App.4th 573, on the day of the murder, July 4, 1986, the wife told her husband she was going to end her relationship with the lover and would return to the husband and their home that night. When she failed to return home, the husband drove to the lover's house, finding the two of them together. He shop the lover in the head and thigh and left the scene. He was convicted later that year of first degree felony murder, the

felony being the theft of his wife's purse, but acquitted of premeditated murder. Id. p.580 n.1. To avoid Scott's appeal on grounds of ineffective assistance of counsel, the prosecutor agreed to a second degree conviction in return for the defendant's waiver of the right to appeal. Id. pp.585-587.    In 2004, the Board found Scott did not pose an unreasonable risk of danger to the community and therefore was suitable for parole. The Governor reversed based on the commitment offense which he characterized as "especially atrocious" and "particularly heinous." The appellate court rejected this characterization. "[T]he record contains no evidence Scott committed his offense 'in an especially heinous, atrocious or cruel manner,' or that the nature of his crime indicates he poses a continuing threat to the public safety if released. ... all of the many psychological evaluations of Scott emphasized that he committed his crime while he was experiencing and unusual amount of stress arising from unusual circumstances not likely to recur, and for that reason there was a low risk he would commit another violent act if released." Id. pp. 600-601.    In in re Lee, 143 Cal.App.4th at page 1404, a man had sold his restaurant, but the buyer was behind in his payments. In 1987, the seller brought a gun and box of bullets when he came to the restaurant to collect an overdue payment, purportedly intending to kill the buyer and then himself. When the buyer refused to pay, the seller drew the gun and fired five rounds, wounding the buyer but killing the buyer's wife. He was sentenced to 17 years to life for the second degree murder and life with the possibility of parole for the attempted murder. Sixteen years later, in 20056, Lee had his first parole hearing and the Board approved an

immediate release, but the Governor reversed the recommendation. Id. pp. 1004-1405. The Appellate Court found there was no evidence to deny parole. Also in late 2006, the Court in In re Elkins, supra, 144 Call.App.4th at pages 476-480, ordered the forthwith release of a prisoner who had been convicted of first degree murder in 1980 receiving a sentence of 25 years to life and whose recommended parole in 2005 had been reversed by the Governor. As is true in petitioner's 12 suitability hearings, the primary grounds for the Board's rejection of parole was the "heinous, atrocious or cruel" nature of the commitment offense. Id. pp.486,493.    The victim in Elkin's crime was a friend who Elkins murdered in the course of a robbery by beating the sleeping victim repeatedly with a baseball bat. He then stole money and property from the victim's bedroom, placed the body in a car trunk, drove to an isolated area near Donner Pass and dumped it.    Elkins had a very good record of progress while in prison - but not nearly as outstanding as the petitioner. Elkins, like the petitioner, participated in a wide array of behavior modification programs including several designed to address the serious drug addiction he suffered during the period when be committed the robbery-murder that put him in prison. He also had developed marketable skills, although not as many as petitioner, and had a viable post-release plan.    The Elkins court then addressed the single factor militating against parole the Governor found sufficient to reverse the Board's recommendation - the "heinous, atrocious or cruel" nature of the murder. despite the violence of the act - striking the victim multiple times with a baseball bat - even coupled with the robbery motive for the crime, dumping the body down a

steep embankment deep in the wilderness, and then fleeing the state to escape responsibility, the court found this commitment crime failed to supply "some evidence" Elkins's release posed "an unreasonable risk of danger to society," Id. pp. 496-499.    The Court of Appeal in the Elkins case took the unusual step of issuing its writ fortwith, ordering the prisoner's immediate release. The California Supreme Court not only denied review, but also denied supersedeas and a depublication request.    If the California Appellate Court employed the correct test, the nature of the commitment offenses and other circumstances in those cases provide strong precedent for concluding petitioner's commitment offense fails to satisfy the California "some evidence" test, and thus the Board's denial of parole.    If this Court has suspicion in relation to a difference between the state Constitution's "some evidence" standard and the federal Constitution's "some evidence" standard, it will find its strongest support in Rosenkrantz v. Marshall, supra, (.D. Cal. 2006) 444 F.Supp.2d 1063. This is the same Rosenkrantz the California Supreme Court decided in 2002 could be denied parole under the California "some evidence" test based solely on the nature of the commitment offense. In ordering Rosenkrantz's release on parole, the federal court relied on Biggs v. Terhune, supra, 334 F.3d 910 to hold, "While relying upon petitioner's crime as an indicator of his dangerousness may be reasonable for some period of time, in this case, continued reliance on such unchanging circumstances - after nearly two decades of incarceration and half a dozen parole suitability hearings - violates sue process because petitioner's commitment offense has become such an unreliable predictor of his present and future dangerousness

that it does not satisfy the 'some evidence' standard. After nearly 20 years of rehabilitation, the ability to predict a prisoner's future dangerousness based simply on the circumstance of his or her crime is nil." Id. p. 1084. Thus, a commitment offense the California Supreme Court had found serious enough to supply "some evidence" under California's constitution to justify a Governor's rejection of parole was found too old to satisfy the federal constitution's "some evidence" test by this federal court. The district court in Martin v. Marshall, (N.D. Cal. 2006) 431 F.Supp.2d 1038, 1043, pointed out the "some evidence" standard applies equally to the Board's decision and the Governor's review of the grant of denial of parole. The Martin court discounted the Governor's characterization of the commitment offense as showing a "callous disregard for human life" but relied more directly on the Biggs court's reasoning about why the commitment offense cannot sustain a dangerousness finding forever. "Because petitioner cannot change the past, denying petitioner parole base only on the facts surrounding the crime itself effectively changes his sentence from twenty years-to-life into life imprisonment without the possibility of parole." The judge then used that rationale to question the Governor's reversal of a parole recommendation in this case. Petitioner's case presents a stronger case for release than Biggs for several reasons. First, petitioner's commitment offense was less serious than the petitioner's in Biggs. The Biggs petitioner's was involved in a violent, manipulative, and premeditated murder. Second, the Biggs petitioner had not yet served the full terms of his sentence, while petitioner here has exceeded his sentence by approximately twenty-five (25) years. Finally,

petitioner has demonstrated exemplary behavior and evidence of rehabilitation, as required by the Biggs court, for a significant period of time Therefore, the Board's reliance on petitioner's commitment offense in denying him parole impinges on petitioner's constitutional liberty interest in parole. The Board's decision fails to adequately take into consideration the significant stress in petitioner's life, i.e., being molested as a child, which led to the commitment offenses. The Board was obligated to consider the significant stress petitioner was experiencing at and prior to the time he committed his offense. (See e.g., Rosenkrantz, supra, 29 Cal.4th at 679; Scott I, 119 Cal,App.4th at p. 899; Scott II, supra, 133 Cal.App.4th at p. 596.) The Board's failure to consider whether petitioner committed his offense as the result of significant stress in his life is arbitrary and capricious in the sense that they failed to apply the controlling legal principles to the facts before them (Scott I, supra, at p. 596.)

## CONCLUSION

The Board during petitioner's parole consideration hearing failed to support there findings with applicable regulations when it based its unsuitable parole finding upon the gravity of the crime. (Cal.Code of Regs., tit. 15 2404.) Moreover, after three decades, mundane "crimes have little, if any, predictive value for future criminality. Simply from the passing of time, [an inmate's] crimes almost 20 years ago have lost much of their usefulness in foreseeing the likelihood of future offenses than if he had committed them five or ten years ago." (In re Lee (2006) 143 Cal.App.4th 1400, 1412.) it should be noted that this rule applies with even more force when the Board is relying on any criminality that occurred

before the crime. As such, the Board must explain why such old events have any relevance and especially when the petitioner has spent over a decade as a model prisoner.        Moreover, the Ninth Circuit and California Supreme Court made it clear that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 917; Rosenkrantz, supra, 29 Cal.4th at 689.)        In the circumstances of this case, the Board's reliance upon the facts of petitioner's crime and his commitment offense as a reason to deny parole after 30 years of incarceration, violates due process. First, a continued reliance upon unchanging factors makes a sham of California's parole system and amounts to an arbitrary denial of petitioner's liberty interest. Second, the circumstances of the crime and petitioner's criminal history do not amount to some evidence supporting the conclusion that petitioner poses an unreasonable risk of danger if released. As the Central District Court in Rosenkrantz v. Marshall, 444 F. Supp.2d 1063, 1081 stated: Whether the facts of the crime of the conviction or other unchanged criteria, affect predicated on the "predictive value" of the unchanged circumstance. Otherwise, if the unchanged circumstance per se can be used to deny parole eligibility, sentencing is taken out of the hands of the judge and totally deposited in the hands of the BPT. That is, parole eligibility could be indefinitely and forever delayed based on the nature of the crime even though the sentence given set forth the possibility of parole - a sentence given with the facts of the crime fresh in the mind of the judge. While it

would not be a constitutional violation to forego parole altogether for certain crimes, what the state cannot constitutionally do is have a sham system where the judge promises the possibility of parole, but because the nature of the crime, the BPT effectively deletes such from the system. nor can a parole system, where parole is mandated to be determined on someone's future potential to harm the community, constitutionally exist where despite 20 or more years of prison life which indicates the absence of danger to the community in the future, the BPT commissioners revulsion towards the crime itself, or come other unchanged circumstance, constitutes the alpha and omega of the decision. Nobody elected the BPT commissioners as sentencing judges. Rather, in some realistic way, the facts of the unchanged circumstance must indicate a present danger to the community if released, and this can only be assessed not in a vacuum, after four or five eligibility hearings, but counterpoised against the backdrop of prison events. Bair v. Folsom State Prison, 2005 WL 2219220, *12 n.3 (E.D. Cal. 2005), report and recommendation adopted by, 2005 WL 3081634 (E.D.Cal. 2005).) A review of petitioner's parole suitability hearings reveals each board commissioner used the same factors to deny parole as the previous Board; and failed to realize that the commitment offense will never change. Does this constitute that the jury's findings were a sham? What is there about the Penal Code pursuant to "Double Jeopardy" the Board doesn't understand when continuing to retry petitioner's case repeatedly, from his first parole consideration hearing to the present? Taking the matrix into consideration, along with "good time credits," petitioner has now been incarcerated equivalent to 40 years on a

7 years to Life sentence. The question must be asked, is petitioner sentenced to life in prison without the possibility of parole? When the Board cites the same factors over and over to deny parole without taking into consideration Cal.Code of Regs., tit. 15 2281 and 2402, and the 15 factors therein, which determines suitability or unsuitability, petitioner's due process rights are violated. As stated earlier, the evidence relied on by the Board must be must be "reliable," (Regs., 2402, subd. (b), 2281, subd. (b)); it must have "some indicia of reliability." It must reflect an individualized consideration of the specitied criteria and cannot be arbitrary or capricious. It is, therefore, respectfully requested that this Honorable Court find that the Board of Prison Hearings violated petitioner's due process rights when it failed to uphold the Cal.Code of Regs., tit. 15 2000(50) in relation to using the preponderance of evidence standard as mandated by the State Legislature. It is further requested that this Honorable Court find there is no evidence to support "an unreasonable risk to society," and order petitioner's release.

Dated: 28 th. DAY OF MAY, 2008

Respectfully Submitted,

Louis Daniels
Litigant Pro-se

# Exhibit 'A'.

## DANIEL'S BPH 2007 DECISION

66

CALIFORNIA BOARD OF PAROLE HEARINGS

D E C I S I O N

1     DEPUTY COMMISSIONER SMITH:  We're back on the

2 record.  Everyone previously identified is back in the

3 hearing room.  Mr. Daniels, I've provided the documents

4 that you provided to us back to you.  When we went

5 through and reviewed them all we did our best to try to

6 keep the two groupings separate.  I must confess I don't

7 know that we were successful in doing that, but all the

8 documents have been returned to you.

9     INMATE DANIELS:  Thank you, Sir.

10     PRESIDING COMMISSIONER KUBOCHI:  Sir, it is 10:54

11 and we're back on the record for the parole

12 consideration hearing of Louis Daniels.  And, sir, I'm

13 going to announce the decision and I, my personal method

14 is to approach matters in a very legal manner in that I

15 believe it is very important for you to have a fair

16 hearing and to understand that we have followed the

17 regulations of Title 15 in not only conducting this

18 hearing but also the basis of our decision.  We try to

19 gather as many facts as possible and to remain totally

20 objective as to all factors discussed during this

21 hearing.  And the reason I'm saying this is that I

22 certainly recognize everything you have accomplished

LOUIS DANIELS    B-82157    DECISION PAGE 1    3/15/07

1   while you're incarcerated and in announcing our

2   decision I don't like the appearance of being heavy-

3   handed.  Sometimes anybody who is making a decision,

4   regardless of what type of enterprise, whether it's

5   judicial, quasi-judicial, on a job, tends not to take

6   into consideration the person who is the subject of

7   that decision and I want you to know that we recognize

8   all of the accomplishments, all of the laudatories, and

9   all of your efforts for self-help and self-study that

10  you've accomplished.

11        However, in reviewing all the information

12  received from the public and all of the information in

13  the Board Report we are finding that you are not

14  suitable for parole and would pose an unreasonable risk

15  of danger to society or a threat to public safety if

16  released from prison.

17        Sir, specifically Title 15, section 2281, sets

18  forth criteria for the determination of suitability and

19  it specifically sets forth circumstances tending to show

20  unsuitability with the language that we can consider all

21  relevant and reliable evidence as well as the fact that

22  circumstances, which taken alone may not firmly

23  establish unsuitability for parole, may contribute to a

24  pattern which results in a finding of unsuitability, as

25  LOUIS DANIELS    B-82157    DECISION PAGE 2    3/15/07

68

1  well as the fact that this Panel may exercise its

2  judgment in attaching what circumstances or combinations

3  of circumstances support your own suitability.

4      In this particular offense it's real clear that

5  you were committing a series, you were a serial rapist.

6  Essentially you are, and that's why I'm saying I'm

7  taking the time to explain our decision.  You are a

8  serial rapist who is in therapy.  There were different

9  victims, different times, different locations.  By the

10 way, in describing these crimes from the police report

11 and the probation reports, while armed you basically

12 were hunting these victims down.  You were predatory in

13 your planning in that in reading the way that these

14 crimes were committed the point of interception of these

15 victims found them in locations where they were alone

16 and they were away from the sight of other pedestrians

17 or cars.

18      Another striking point in reading all these

19 crimes in total is that you were, you were going to

20 continue these crimes.  You weren't going to stop.  The

21 only way you were stopped is you were arrested by a

22 police officer that recognized you lurking around a

23 building and that you matched the description of a

24 bulletin.  And one of the factors we consider is whether

25 **LOUIS DANIELS    B-82157    DECISION PAGE 3    3/15/07**

1    or not in committing a crime or crimes the perpetrator
2    could mitigate his circumstance by ceasing or aggravate
3    his circumstances by not ceasing.  This was serial rape
4    while armed.  In addition, the way that some of these
5    were individually carried out indicates that you
6    demonstrated some type of satisfaction in regard to the
7    control over these women that you had with the gun.

8        This Panel doesn't find that the motive was
9    robbery.  You started out by demanding money but, in
10   looking at the crimes in its essence, rape was your goal
11   all along.  At the taunt over money, telling them to
12   disrobe were control factors that you exercised while
13   you had a gun and you had these people under submission.
14   And one can only imagine the psychological harm that was
15   done to these women, not knowing what was going to
16   happen.  It wasn't a robbery, it was control over these,
17   another human being who happened to be women.  The rape
18   is just unjustifiable in regard to the motivation for
19   you to commit these crimes.

20       Now, we see a person today who through
21   rehabilitation, through your written statement, realizes
22   the individual trauma in your life that caused you to do
23   things, but this Panel has to look at the multiple
24   victims being attached, the way that they were carried
25   LOUIS DANIELS      B-82157      DECISION PAGE 4      3/15/07

```
 1   out that demonstrates a callous disregard for their
 2   safety, in balancing your statements that you made
 3   today.  We find that the factors in unsuitability in
 4   the way that these crimes were committed far, far out
 5   of balance with the rehabilitative efforts that you
 6   have made up to this point.
 7        We find that you had a record for violence and
 8   assaultive behavior attested by your arrest for robbery
 9   that was settled for grand theft person just before, not
10   years before this series started, which these crimes
11   demonstrate an escalating pattern of criminal conduct
12   and violence.  Another point that impacted this Panel is
13   that after being convicted of all of the crimes in San
14   Francisco, five years later in fact, you molested your
15   stepdaughter, and that has to be considered by this
16   Panel.
17        We've honored your right not to talk about the
18   case so we objectively looked at the crimes for which
19   you were convicted, the patterns based on those facts,
20   also the probation report indicates that by age 16 their
21   documents document history that shows that you have four
22   commitments to the Youth Authority by age of 16.  You
23   were 26 years old or 27 years old at the time you .
24   started these crimes, which clearly is an age where you
25   LOUIS DANIELS    B-82157    DECISION PAGE 5    3/15/07
```

1    recognize right from wrong. And like I say, regardless

2    of what your childhood was like, in looking at what you

3    did to these victims, 27 years old is not the same as

4    having a traumatic childhood and making bad judgment at

5    16 or 17 years old. You were 27 years old and you're

6    presumed to know right from wrong and the way to handle

7    your problems are to seek therapy flat out.

8         We can't sit here and justify the commission of

9    your crimes because of your childhood. Judgment upon

10   you was imposed the judge in San Francisco. We're not

11   passing judgment on you as a human being, but we have to

12   consider these factors in determining whether there were

13   mitigating circumstances that support a finding of

14   suitability, and we don't find enough of that.

15        As I've indicated, your institutional behavior

16   has been exemplary. We hope that you can maintain that.

17   We believe that alternative plans should be considered

18   by you for, in parole plans, and I'm going to have

19   Commissioner Smith comment on that, comments on that in

20   a little bit.

21        The record should reflect that we've heard the

22   opposition of the San Francisco District Attorney's

23   office and we make a finding that you need continued

24   therapy in order to face, discuss, understand, and cope

25   LOUIS DANIELS    B-82157    DECISION PAGE 6    3/15/07

1  with stress in a nondestructive manner, and that until

2  further progress is made you continue to be

3  unpredictable and a threat to others.  And as I've

4  indicated, you have substantial gains but we believe

5  they've been balancing this against the crimes in

6  support of your life commitment as well as the

7  subsequent molestation, that it is incumbent upon you to

8  demonstrate an ability to maintain these gains further.

9  Commissioner?

10      DEPUTY COMMISSIONER SMITH:  Mr. Daniels, this is

11  a one-year denial.  A recommendation that I'd like to

12  make or we would like to make is that, you know,

13  although your parole plans were appropriate, and this is

14  only a recommendation, that firming up some parole plans

15  regarding residence at a location other than with your

16  mother would, I think, make you a stronger candidate.

17  And the reason that I say that, and again it's a

18  recommendation, is that you were residing with your

19  mother during your juvenile years and your early years

20  when the crime history began.  She didn't have much

21  control over you then, at her age now I'm not sure how

22  much control she would have over you now and whether or

23  not going back into a similar type of environment would

24  necessarily be in your best interest.  And again, that's

25  LOUIS DANIELS    B-82157    DECISION PAGE 7    3/15/07

1   only a recommendation.  It is not a criticism and we
2   did find that the parole plans that you presented were
3   adequate and we did accept them, and nothing in those
4   parole plans, you know, led to the one-year denial.
5       .   But, so, my comment again is that is strictly a
6   recommendation.  I wish you well, sir.
7           **PRESIDING COMMISSIONER KUBOCHI:**  Thank you.   It's
8   11:10.  This hearing is concluded.
9           **DEPUTY COMMISSIONER SMITH:**  Mr. Stringer, we're
10  giving this back to you.
11          **ATTORNEY STRINGER:**  Thank you, Sir.
12                        --oOo--
13
14
15
16
17
18
19
20
21  PAROLE DENIED ONE YEAR
22  THIS DECISION WILL BE FINAL ON: _____ **JUL 1 3 2007** _____
23  YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT   .
24  DATE, THE DECISION IS MODIFIED
25  LOUIS DANIELS    B-82157    DECISION PAGE 8    3/15/07

74

# CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, CAROL EDWARDS, as the Official Transcriber,

hereby certify that the attached proceedings:

| | | |
|---|---|---|
| In the matter of the Life | ) | CDC Number:  B-82157 |
| Term Parole Consideration | ) | |
| Hearing of: | ) | |
| | ) | |
| LOUIS DANIELS | ) | |
| ———————————————— | ) | |

SAN QUENTIN STATE PRISON

SAN QUENTIN, CALIFORNIA

MARCH 15, 2007

9:00 A.M.

Were held as herein appears.  Further, this transcript

is a true, complete and accurate record, to the best of

my ability, of the recorded material provided for

transcription.

_Carol Edwards_

Carol Edwards
May 13, 2007
Capitol Electronic Reporting

# Exhibit 'B'.

## SAN FRANCISCO COUNTY SUPERIOR COURTS
## ORDER DENYING HABEAS CORPUS

1      SUPERIOR COURT OF THE STATE OF CALIFORNIA

2      FOR THE CITY AND COUNTY OF SAN FRANCISCO

3      Department No. 22

4   _____
    IN THE MATTER OF THE APPLICATION    )    WRIT NUMBER 5674
5                                  OF    )
                                         )              ENDORSED
6              Louis C. DANIELS          )              F I L E D
                                         )         San Francisco County Superior Court
7                   Petitioner,          )
                                         )              JAN 2 3 2008
8      FOR A WRIT OF HABEAS CORPUS       )    ORDER    GORDON PARK-LI, Clerk
    _____  )            BY: ____CARLOS BARRAZA____
9                                                                      Deputy Clerk

10         Louis C. Daniels ["Petitioner"] has filed a petition for

11     writ of habeas corpus complaining of due process violations at

12     his eleventh subsequent parole suitability hearing before the

13     Board of Parole Hearings ["Board"] in March 2007.[1]

14

15         **Background**

16         Petitioner is serving a life sentence in state prison

17     following his conviction in San Francisco Superior Court in 1977

18     of several counts of kidnap to commit robbery and various other

19     crimes, including rape.  In his petition, he complains the

20     Board's latest parole denial offends due process because the

21     panel illegally relied on the unchanging factor of his

22     commitment offense in reaching this decision.

23     //

24     _____

25     [1]    Petitioner has filed a supplemental pleading that raises additional
       claims, cites additional authorities and corrects certain errors.  He has
       also filed a request for ruling.  (Cal. Rules of Ct. R 4.551, subd.
       (a)(3)(B).)

                                    1

1       The hearing transcript ["RT"] reveals the Board panel found

2   that despite "all of [Petitioner's] accomplishments, all of the

3   laudatories, and all of [his] efforts for self-help and self-

4   study", all relevant information indicated he was not suitable

5   for parole and would pose an unreasonable risk of danger to

6   society if released from prison."  (RT at 67.)

7

8       Petitioner The Court requests an informal response before

9   passing on the petition.  ( (West 2007)[2].)

10

11      **Relevant law**

12      The law requires the Board to consider all relevant and

13  reliable information available when determining suitability for

14  parole.  (15 Cal. Admin Code § 2402, subd. (b).)  Section 2402

15  of title 15 of the California Administrative Code ["section

16  2402"] enumerates these factors.

17

18      The factors each showing parole unsuitability are that the

19  inmate: 1) committed the offense in an especially heinous,

20  atrocious, or cruel manner,[3] 2) possesses a previous record of

21  violence, 3) has an unstable social history, 4) previously has

22  _____

23  [2]    All further references to rules and statutes are to this edition.

24  [3]    This might include circumstances where: 1) multiple victims were
    attacked in the same or separate incidents, 2) the offense was carried out in
    a dispassionate and calculated manner (i.e. an execution-style murder; 3) the
25  victim was abused, defiled, or mutilated; 4) the inmate demonstrated an
    exceptionally callous disregard for human suffering; and 5) the motive is
    inexplicable or very trivial in relation to the offense.  (§ 2402(c)(1).)

2

1   sexually assaulted another individual in a sadistic manner, 5)

2   has a lengthy history of severe mental problems related to the

3   offense, and 6) has engaged in serious misconduct while in

4   prison.  (§ 2402, subd. (c).)

5

6       The factors each showing parole suitability are that the

7   inmate: 1) does not possess a record of violent crime, 2) has a

8   stable social history, 3) has shown signs of remorse, 4)

9   committed the crime as the result of significant stress in his

10  life, 5) lacks any significant history of violent crime, 6) is

11  of an age that reduces the probability of recidivism, 7) has

12  made realistic plans for release or has developed marketable

13  skills that can be put to use upon release, and 8) has engaged

14  in institutional activities that indicate an enhanced ability to

15  function within the law upon release.  (*Id.*, subd. (d).)

16

17      Because circumstances that may not firmly establish parole

18  unsuitability standing alone may contribute to a pattern that

19  results in a finding of unsuitability, the Board has broad

20  discretion to attach particular importance to any circumstance

21  or combination of circumstances tending to indicate

22  unsuitability for parole.  (*Id.*, subd. (c).)  Hence, due process

23  of law requires only that "some evidence" relevant to the

24  enumerated factors supports the Board's decision.  (*In re*

25  *Powell* (1988) 45 Cal.3d 894, 902, 904.)

 1          Regardless of the length of time a life prisoner has
 2   served, the Board may find the prisoner unsuitable for parole if
 3   it concludes the gravity of the prisoner's commitment offense
 4   indicates he or she continues to pose an unreasonable risk of
 5   danger to society if released from prison.  (§ 2402, subd. (a);
 6   *In re Rosenkrantz* (2002) 29 Cal.4th 616, 682-83, cert. den.; *In*
 7   *re Dannenberg* (2005) 34 Cal.4th 1061, 1085, 1098.)  The Board
 8   may base such an unsuitability finding solely on the nature of
 9   the commitment offense if the circumstances of the offense can
10   reasonably be considered more aggravated or violent than the
11   minimum necessary to sustain a conviction.  However, the Board
12   must consider all the relevant factors on an individual basis
13   and may not adopt a blanket rule that automatically excludes
14   parole for individuals who have been convicted of a particular
15   type of crime.  (*Rozenkrantz*, *supra*, 29 Cal.4th at 682-83;
16   *Dannenberg*, *supra*, 34 Cal.4th at 1095.)

17

18          A reviewing court must affirm a parole denial if some
19   evidence relevant to the enumerated factors supports the
20   decision.  (*Rosenkrantz*, *supra*, 29 Cal.4th at 676-77.)  A
21   modicum of evidence suffices.  (*Id.* at 677.)  This standard,
22   however, does not require the court to simply rubberstamp a
23   parole denial whenever some evidence supports the reasons the
24   parole authority cites for denying parole.  (*In re Barker* (2007)
25   151 Cal.App.4th 346, 366; *In re Lee* (2006) 143 Cal.App.4th 1400,

                                  4

1  1408, as mod.)  The test in reviewing a parole denial "is not

2  whether some evidence supports the *reasons* the Board [or the

3  Governor] cites for denying parole, but whether some evidence

4  indicates a parolee's release *unreasonably endangers public*

5  *safety.* [Citations.]"  (*Barker*, *supra*, 151 Cal.App.4th at 366,

6  citing *Lee*, *supra*, 143 Cal.App.4th at 1408, italics added by

7  *Lee*.)

8

9      This makes sense.  On the one hand, "the overarching

10  consideration in determining whether to grant parole is public

11  safety."  (*Barker*, *supra*, 151 Cal.App.4th at 366.)  On the

12  other, "[s]ome evidence of the existence of a particular factor

13  does not necessarily equate to some evidence the parolee's

14  release unreasonably endangers public safety."  (*Id.*, citing

15  *Lee*, *supra*, 143 Cal.App.4th at 1408.)  Judicial review under the

16  some evidence standard aims to "ensure[…] that parole decisions

17  are supported by some evidence and are not arbitrary and

18  capricious."  (*Rosenkrantz*, *supra*, 29 Cal.4th at 626.)  It

19  follows that, even though the parole authority has broad

20  discretion to attach particular significance to any circumstance

21  or combination of circumstances, the required modicum of

22  evidence should support a rational inference that release would

23  unreasonably endanger public safety.  (*Rosenkrantz*, *supra*, 29

24  Cal.4th at 677-79; 15 Cal. Admin. Code § 2404, subds. (c), (d).)

25

1        As the Second District Court of Appeal has illustrated,

2   even though a seriously troubled adolescence might show some

3   evidence of a history of unstable relationships with others,

4   which is a factor indicating unsuitability for parole, it would

5   not necessarily be some evidence of an unreasonable danger to

6   public safety in the case of an 80-year old inmate.   (143

7   Cal.App.4th at 1408 & fn. 4.)   The Sixth District Court of

8   Appeal made the same deduction in *In re Smith* (2003) 114

9   Cal.App.4th 343:

10          In sum, the sole factor cited by the Governor-Smith's
            entrenched desire for drugs due to long-term abuse-does
11          not constitute some evidence that Smith might start
            using drugs and become violent again, and therefore
12          that he *currently* poses an unreasonable risk of danger
            without further treatment. Indeed, if Smith's past use
13          of drugs did invariably establish his unsuitability,
            then the Governor could deny parole for the rest of
14          Smith's life based on this immutable factor, without
            regard to or consideration of subsequent circumstances
15          and evidence indicating that he has no current desire
            for drugs and that there is little current likelihood
16          of drug relapse, let alone a return to violent conduct
            as a result of it.
17

18          (*Id.* at 372.)

19

20          Accordingly, "[t]he commitment offense can negate

21   suitability only if circumstances of the crime reasonably

22   established by the evidence in the record rationally indicate

23   that the offender will present an unreasonable public safety

24   risk if released from prison." (*In re Scott* (2005) 133

25   Cal.App.4th 573, 595, review den.)

6

1        Moreover, even though the parole authority may find

2   unsuitability on this basis regardless of the length of time the

3   prisoner has served (*Rozenkrantz*, *supra*, 29 Cal.4th at 682-83),

4   the crime's predictive value may become "very questionable after

5   a long period of time" (*Scott*, *supra*, 133 Cal.App.4th at 595).

6   Reliance on the immutable factors of the prisoner's commitment

7   offense and previous record of violence "without regard to or

8   consideration of subsequent circumstances" "runs contrary to the

9   rehabilitative goals espoused by the prison system and could

10  result in a due process violation." (*Scott*, *supra*, 133

11  Cal.App.4th at 595, citations om.) Hence, a denial of release

12  based solely on the gravity of the commitment offense warrants

13  "especially close scrutiny." (*Id.*) "The gravity of the

14  commitment offense or offenses alone *may* be a sufficient basis

15  for denying a parole application, *so long as the Board does not*

16  *fail to consider all other relevant factors.* [Citations.]"

17  (*Id.*, latter italics added by *Scott*.)

18

19       Here, the Board panel found "the factors in unsuitability

20  in the way that these crimes were committed" and Petitioner's

21  prior criminal history "far, far out of balance with" his

22  rehabilitative efforts to date. (RT at 70.) The panel remarked

23  Petitioner has made "substantial gains" and his institutional

24  behavior has been "exemplary," but found it necessary for him

25  "to demonstrate an ability to maintain these gains further."

7

1  (RT at 6, 72.)   The panel concluded that "all relevant

2  information indicated he was not suitable for parole and would

3  pose an unreasonable risk of danger to society if released from

4  prison."   (RT at 67.)

5

6      To be sure, the reporter's transcript of the hearing ["RT"]

7  rationally supports the panel's conclusions about Petitioner's

8  criminal record.

9

10     As the panel remarked, Petitioner was a serial rapist who

11 followed his female victims until they were alone in a secluded

12 area and raped them at gunpoint.  (RT at 68.)   The manner in

13 which he committed the crime also "demonstrated some kind of

14 satisfaction in regard to the control over these women that you

15 had with the gun."  (Id. at 69, 24-31.)  He did this to six

16 different women.   Police arrested him while he was preying on

17 another woman.   (RT at 68-69, 31-32.)   He was 26 to 27 years old

18 when he committed these crimes and, at this age, presumed to

19 have known right from wrong--his traumatic childhood and history

20 of psychological problems notwithstanding.   (Id. at 71, 33, 45.)

21 The record also shows Petitioner has a lengthy and serious prior

22 criminal history and, following his conviction on the commitment

23 crimes, suffered a conviction in Marin County Superior Court for

24 molesting his stepdaughter several years earlier.   (Id. at 70-

25 71, 32.)

8

1    Petitioner's commitment crimes seem to constitute 'some

2  evidence' of unsuitability.  These crimes also reasonably

3  suggest that Petitioner will be an unreasonable risk to public

4  safety if released.  Because the Board has broad discretion to

5  judge any circumstance or combination of circumstances

6  (*Rosenkrantz, supra,* 29 Cal.4th at 677-79), the panel was

7  entitled to discount Petitioner's age and health problems and

8  conclude that Petitioner's commitment offense and the

9  seriousness of his criminal record equate to some evidence that

10  his release unreasonably endangers public safety.  (*Id.*)  The

11  Court does not find this conclusion offends due process.  (*Id.*)

12

13    The Court accordingly DENIES the petition for writ of

14  habeas corpus.  (Cal. Rules of Ct. R. 4.551.)

15

16

17

18

19

20  Dated: 1/18/08

21                                      Judge of the Superior Court

22

23

24

25

# Exhibit 'C'.

## COURT OF APPEAL FIRST APPELLATE
## DISTRICT ORDER DENYING HABEAS CORPUS



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

FILED
Court of Appeal First Appellate District

FEB 07 2008

Diana Herbert, Clerk
By_____Deputy Clerk

In re LOUIS C. DANIELS,

on Habeas Corpus.

A120571

(San Francisco County
Super. Ct. No. 5674)

BY THE COURT:

    The petition for a writ of habeas corpus is denied.

    (Ruvolo, P.J., and Reardon, J., joined in the decision.)

Dated:    FEB - 7 2008          **RUVOLO, P.J.**      P.J.

# Exhibit D

# Order denying petition for review

Court of Appeal, First Appellate District, Div. 4 - No. A120571
**S161357**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re LOUIS C. DANIELS on Habeas Corpus

The petition for review is denied.

**SUPREME COURT**
**FILED**

APR 3 0 2008

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**
_____
Chief Justice

## PROOF OF SERVICE

### C.C.P. section 1013a & 2015.5; 28 U.S.C. section 1746

I, LOUIS DANIELS am a resident of San Quentin State Prison, in the County of Marin, State of California, am over the age of eighteen (18) years and am a party to the above-entitled action.   My State prison address is San Quentin Prison, San Quentin, California 94974.

On May 28, 2008, I served the foregoing information to which was a writ of habeas corpurs on the party(s) herein by placing a true copy(s) thereof, enclosed in sealed envelope(s), with postage thereon fully paid, in the United States mail, in a deposit box so provided by the U.S. Postal Service, addressed as follows:

> Clerk of the Court
> Feeral District Court for the
> Northeren District of California
> 450 Golden Gate Ave.,
> San Francisco, CA 94102-3483

> Office of the Attorney General
> 455 Golden Gate Ave.,
> San Francisco, CA  94102

There is delivery service by United States mail at the places so addressed, and/or there is regular communication by mail between the place of mailing and the place so addressed. I declare under penalty of perjury that the foregoing is true and correct.   Executed this 28 day of May 2008.

SS Louis C. Daniels

Louis Daniels
Petitioner Pro-se