United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LOUIS DANIELS,

    Petitioner,

    v.

ROBERT L. AYERS, JR., Warden,

    Respondent.

No. C 08-2934 SI (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

## BACKGROUND

In 1977, a San Francisco Superior Court jury convicted Petitioner of twenty-six felony charges of, inter alia, robbery, burglary with the intent to commit rape, and kidnapping for purposes of robbery. (Ans., Ex. 1 (Transcript of Parole Hearing) at 4; Pet. at 3.) The trial court sentenced Petitioner to an indeterminate life term with the possibility of parole.[1] (Ans., Ex. 1 at 5.) In 2007, the Board of Parole Hearings ("Board") found Petitioner unsuitable for parole

---

[1] Petitioner is also serving a five year sentence for a 1981 conviction of lewd and lascivious conduct with his stepdaughter. (Ans., Ex. 1 at 5.)

on grounds that he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Id. at 67.)

In November 1976, Petitioner raped five women at gunpoint, robbed some of them, and attempted to rob another. On November 8th, Petitioner raped Sandy H. at gunpoint, and threatened to kill her if she did not comply with his directions. On November 10th, Petitioner attempted to rob Anita O. at gunpoint, but, after the victim's screams brought the attention of bystanders, Petitioner fled. That same night, Petitioner digitally raped Carolyn D. at gunpoint, and threatened to "blow her head off" if she struggled. After a passerby interrupted the crime, Petitioner took the victim's purse and fled. On November 13th, Petitioner raped Monica F. at gunpoint, and threatened to shoot her if she called out. On November 18th, Petitioner raped Mary H. at gunpoint. On November 28th, Petitioner raped Susan S. at gunpoint, and threatened to "blow" her brains out if tried to run or scream. In December 1976, the police arrested Petitioner after he was observed lurking on the sidewalk while watching a woman exit a building across the street. (Id. at 24–31.)

At his 2007 parole hearing, the Board discussed the circumstances of Petitioner's crimes, noting that Petitioner was a "serial rapist," who was "hunting these victims down." (Id. at 68.) The Board found it clear that Petitioner was "going to continue these crimes": "The only way you were stopped is you were arrested by a police officer that recognized you lurking around a building and that you matched the description of a bulletin." (Id.) "Rape was your goal all along," the Board concluded, rejecting the idea that Petitioner was only motivated to rob. (Id. at 69.) "It wasn't robbery, it was control over these, another human being who happened to be women." (Id.) Such actions, which included the attack of multiple victims (id. at 69), the Board found, demonstrated "a callous disregard for human suffering." (Id. at 70.)

In addition to the circumstances of the commitment offense, the Board cited as factors in its decision Petitioner's criminal and social history, and his psychological evaluations. Petitioner's criminal history was described by the Board as "a record for violence and assaultive behavior." (Id.) First arrested at eleven, Petitioner was committed to the Youth Authority four

times by the age of sixteen. (Id. at 32, 33.) His juvenile record included petty and vehicle theft, while his adult criminal record included, in addition to the commitment offenses, a burglary charge, a county jail term, "four stolen auto arrests," assault with a deadly weapon, felony possession of a firearm, resisting police, and carrying a concealed weapon in a car. (Id., (Transcript of 2005 Parole Hearing) at 82.) The Board also noted Petitioner's unstable social history, which included choking a cat, and "aggressive behavior in at school" that on one occasion resulted in teachers having to restrain Petitioner. (Id., Ex. A (Transcript of 2007 Parole Hearing) at 33–34.) Petitioner, according to the Board, experienced physical and sexual abuse in his childhood. (Id. at 45.)

The Board reviewed Petitioner's psychosocial assessment. In this assessment, Petitioner was "deemed to [have] a low risk of initiati[ng] [] violent behavior in a controlled setting." (Id. at 45.) However, Petitioner has a number of "risk factors associated with [an] elevated risk of recidivism." (Id.) If released from prison, the assessment "recommended that [Petitioner] receive close supervision in the community and that given [Petitioner's] lack of experience [] functioning in a nonviolent manner in a nonsupervised setting that parole to a residential program that would provide supervision and assist with transition back into the community would be advisable." (Id. at 45–46.)

The Board also considered factors in Petitioner's favor. Petitioner had excellent participation in self-help programs, and his "institutional behavior" was "exemplary." (Id. at 71.)

In light of all these factors, the Board concluded that Petitioner posed an unreasonable threat to public safety and denied him parole. In response to the Board's decision, Petitioner sought, and was denied, state habeas relief. In 2008, Petitioner filed the instant federal habeas petition, alleging that the Board's decision violated his federal right to due process because it was not supported by sufficient evidence.

3

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

Petitioner claims that the Board's decision was not supported by sufficient evidence. "[T]here is no evidence, not a modicum of evidence, to deny parole." (Pet., Attachment A at 6–7.)

In California, prisoners have a federally protected liberty interest in parole. See Sass v. Calif. Bd. of Prison Terms, 461 F.3d 1123, 1127–28 (9th Cir. 2006) (citing McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002)). According to "clearly established" federal law, a parole board's decision to deny an inmate parole complies with due process where there is "some evidence" to support the Board's decision. See Superintendent v. Hill, 472 U.S. 445, 454–55(1985); Sass, 461 F.3d at 1128. Under the "some evidence" standard, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [ ] board." Hill, 472 U.S. at 455–56. In addition, the evidence underlying the parole board's decision must have "some indicia of reliability." See McQuillion, 306 F.3d at 904. Accordingly, if a parole board's determination with respect to parole suitability is to satisfy due process, such a determination must be supported by "some evidence" having "some indicia of reliability." Id.

In assessing whether there is "some evidence" to support a board's denial of parole, this Court must examine the record, and consider the regulations that guide the parole board in making its parole suitability determination. Pursuant to such regulations, "[t]he panel shall first determine whether a prisoner is suitable for release on parole[;] [r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2281(a); see In re Lawrence, 44 Cal. 4th 1181 (2008). The Board is to consider the circumstances relevant to the question of parole suitability as enumerated by the

regulations, see id. § 2281(c)–(d),[2] and "all relevant, reliable information available." Id. § 2281(b).

Here, the record shows that the Board had some reliable evidence to support its finding of unsuitability. The circumstances surrounding the commitment offenses, which suggested an exceptionally callous disregard for human suffering, appropriately were particularly relevant to the Board's decision. Specifically, over a single month, Petitioner attacked and raped — or, as the Board put it, hunted — five women at gunpoint, often threatening to kill them if they did not comply. While the circumstances of the commitment offense can, over time, cease to have probative value and a parole board's continued reliance on those circumstances as the basis for denying parole can raise due process concerns, see Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003), in the instant case, the circumstances of the crime constitute some evidence of Petitioner's dangerousness.

Additionally, the Board's consideration of Petitioner's criminal history and psychological assessment provided support for its determination to deny parole. The record, as noted, shows that Petitioner's criminal history is extensive, starting with an arrest at age eleven, and ending with the commitment offenses. It is reasonable to infer from the psychological assessment that, if released, Petitioner was likely to reoffend unless kept under close supervision. In sum, because the Board's decision is supported by sufficient evidence in the record, and was based on an individualized assessment of the particular circumstances of Petitioner's case, Petitioner's claim that the Board's decision violated his right to due process is without merit.

---

[2] The circumstances tending to show unsuitability for parole include: (1) the commitment offense was committed in "an especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors. (6) institutional behavior. See 15 Cal. Code Regs. § 2281(c). Factors to be considered in determining whether the offense was committed "in an especially heinous, atrocious or cruel manner" include: (A) multiple victims were attacked, injured or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; (E) the motive for the crime is inexplicable or very trivial in relation to the offense. See id., § 2281(c)(1)(A)–(E).

6

## CONCLUSION

The state court's denial of Petitioner claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

The Clerk shall enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED**.

DATED: March 9, 2010

_____
SUSAN ILLSTON
United States District Judge